## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL PARKS CONSERVATION         )
ASSOCIATION,                         )
777 6th Street NW, Suite 700         )
Washington, DC 20001-3723            )
                                     )
                    Plaintiff,       )
         v.                          )
                                     )
UNITED STATES FOREST SERVICE         )
1400 Independence Ave., SW           )
Washington, DC 20250-1111;           )
                                     )
TOM VILSACK, Secretary of the United )
States Department of Agriculture     )
1400 Independence Ave., SW           )
Washington, DC 20250-0003;           )
                                     )   **Case No. 15-1582**
TOM TIDWELL, Chief, United States    )
Forest Service                       )   **Hon. _____**
1400 Independence Ave., SW           )
Washington, DC 20250-1111;           )
                                     )
LEANNE MARTEN, Regional Forester for )
the Northern Region of the United States )
Forest Service                       )
200 East Broadway                    )
P.O. Box 7669                        )
Missoula, Montana 59807-7669;        )
                                     )
DENNIS NEITZKE, Forest/Grasslands    )
Supervisor, Dakota Prairie Grasslands )
2000 Miriam Circle                   )
Bismarck, ND 58501                   )
                                     )
SHANNON BOEHM, District Ranger,      )
Medora Ranger District               )
99 23rd Ave. W., Suite B             )
Dickinson, ND 58601                  )
                                     )
                    Defendants.      )

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff National Parks Conservation Association ("NPCA") hereby seeks declaratory and injunctive relief against Defendants United States Forest Service, Tom Vilsack in his official capacity as Secretary of the United States Department of Agriculture, Tom Tidwell in his official capacity as Chief of the United States Forest Service, Leanne Marten in her official capacity as Regional Forester for the Northern Region of the United States Forest Service, Dennis Neitzke in his official capacity as Forest Supervisor of the Dakota Prairie Grasslands, and Shannon Boehm in his official capacity as District Ranger of the Medora Ranger District, in connection with Defendants' approval of an Environmental Assessment and Decision Notice / Finding of No Significant Impact, on January 6, 2015, for the large proposed new gravel pit that is directly within the viewshed of the nearby historic Elkhorn Ranch in Theodore Roosevelt National Park in western North Dakota.  In support of this Complaint, NPCA states the following:

## INTRODUCTION AND NATURE OF ACTION

1.      This action challenges the Defendants' violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553–559 and §§ 701–706, by approving a Decision Notice ("DN") and Finding of No Significant Impact ("FONSI") for the large proposed "Elkhorn Gravel Pit" on United States Forest Service land that is directly within the viewshed of the Theodore Roosevelt National Park's historic Elkhorn Ranch Unit.

2.      Plaintiffs contend that Defendants' failure to perform an Environmental Impact Statement is arbitrary and capricious and violates the requirements of NEPA and the APA.

3.      The Elkhorn Ranch is the ranch where President Theodore Roosevelt spent the

bulk of his time in North Dakota and where he formed many of his conservation ideas.

4.      A portion of the historic Elkhorn Ranch, including the location where Theodore Roosevelt's house stood, was designated as part of Theodore Roosevelt National Memorial Park by the United States Congress in 1947, and as the Elkhorn Ranch Unit of Theodore Roosevelt National Park in 1978, because of its tremendous cultural, historical, recreational, and environmental value.

5.      President Theodore Roosevelt settled the Elkhorn Ranch in 1884 while seeking solitude in the Dakota Territory.  He chose the Elkhorn Ranch site due to its rugged beauty and quiet isolation.  From his veranda, Theodore Roosevelt looked out on a peaceful view that includes buttes, cottonwood trees and the Little Missouri River.

6.      The Elkhorn Ranch site is integral to American history, as President Theodore Roosevelt first realized the importance of conserving our nation's natural resources and scenic wonders while living at Elkhorn Ranch.

7.      The Elkhorn Ranch is consequently referred to by some as the "Cradle of Conservation."

8.      President Theodore Roosevelt also credited his time in the Dakota Territory with enabling him to become President, stating he never would have done so without his experiences in North Dakota.

9.      Plaintiff National Parks Conservation Association is a civic organization organized and incorporated in Washington, D.C. that is devoted to protecting and enhancing America's National Park System.  NPCA members from across the country visit and enjoy recreational activities in the Theodore Roosevelt National Park, in the nearby National Grassland, and in the vicinity of the proposed new gravel pit.

10.     NPCA and its members will be adversely affected by the proposed Elkhorn Gravel Pit.

11.     The Elkhorn Gravel Pit is a proposed new 24.6-acre gravel pit in the Medora Ranger District of the Dakota Prairie Grasslands that lies completely within the boundaries of the Greater Elkhorn Ranchlands National Historic District.

12.     This proposed large gravel pit would be located less than 4,250 feet from the historic Elkhorn Ranch Unit of Theodore Roosevelt National Park.

13.     This proposed large new gravel pit would be both visible and audible from the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

14.     In 2007, due to the same cultural, historical, recreational, and environmental values that led the United States Congress to establish Theodore Roosevelt National Park, a group of over 100 private individuals and organizations from around the country partnered with the United States Forest Service to purchase 5,200 acres of land surrounding the Elkhorn Ranch Unit of Theodore Roosevelt National Park.  These lands were part of the original Elkhorn Ranch and provide the striking views and peaceful sounds that President Theodore Roosevelt experienced from the veranda of his Elkhorn Ranch home.

15.     In 2012, a large portion of the Forest Service-acquired ranchlands, including the proposed new gravel pit area, together with the Elkhorn Ranch Unit of Theodore Roosevelt National Park and adjacent private land, were formally approved for listing as a National Historic District in the National Register of Historic Places.

16.     Visitors go to the Elkhorn Ranch Unit of Theodore Roosevelt National Park to experience the same stunning views and solitude that Theodore Roosevelt experienced when he lived at Elkhorn Ranch.

17.     The same bird species can be heard from the location of President Roosevelt's Elkhorn Ranch veranda, and the wind whistles through the same cottonwood trees as when President Roosevelt was there.

18.     The proposed large new Elkhorn Gravel Pit would cause significant noise that would be heard in the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

19.     The proposed large new Elkhorn Gravel Pit would cause significant visual disturbances of the natural landscape that would be seen from the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

20.     The proposed large new Elkhorn Gravel Pit would also lead to decreases in tourism due to its significant adverse effects on the defining characteristics of the historic Elkhorn Ranch site – beauty, serenity, and solitude.

21.     Defendant Forest Service admits in its Environmental Assessment ("EA") that the proposed large new Elkhorn Gravel Pit would be both visible and audible from the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

22.     On January 6, 2015, Defendant Forest Service approved a Decision Notice / Finding of No Significant Impact for the proposed new Elkhorn Gravel Pit.  This approval constituted a final federal action because it completed the Defendants' environmental review process for the proposed Elkhorn Gravel Pit.

23.     Defendants violated NEPA, in part, because they acted arbitrarily and capriciously, abused their discretion and acted not in accordance with law by relying on an illegally narrow Purpose and Need Statement for the proposed action that made their approval of construction of the proposed new Elkhorn Gravel Pit a foregone conclusion.  *See Simmons v. Army Corps of Engineers,* 120 F.3d 664 (7th Cir. 1997).

24.     Defendants further violated NEPA when, as a result of this narrow Purpose and Need Statement, the Forest Service rejected consideration of all but one alternative for the proposed gravel pit, in violation of NEPA's requirement that the  agency "rigorously explore and objectively evaluate  all reasonable alternatives" to and for the proposed new Elkhorn Gravel Pit. 42 U.S.C. § 4332(2)(C); 5 U.S.C § 702; 40 CFR §1502.14(a).

25.     Defendants also violated NEPA by failing to conduct an adequate analysis of the proposed Elkhorn Gravel Pit's environmental impacts, and by failing to take a hard look at the significant direct, indirect and cumulative impacts of the proposed new Elkhorn Gravel Pit.  40 CFR §1508.7 and §1508.8.

26.     Defendants violated NFMA, in part, by failing to engage in a process to revise or amend the Land and Resource Management Plan ("Forest Plan") for the Dakota Prairie Grasslands before finalizing their decision to approve the proposed new Elkhorn Gravel Pit.

27.     Defendants' approvals and other related actions should be reversed and remanded in order to avoid causing irreparable harm to natural resources and environmental quality, to NPCA members' use and enjoyment of the Elkhorn Ranch Unit of Theodore Roosevelt National Park and other resources, and to the public's interests.

28.     NPCA respectfully requests that the Court enter an Order: (1) Declaring that the Defendants violated NEPA, NFMA and the APA in approving the EA and DN/FONSI for the proposed new Elkhorn Gravel Pit; (2) Declaring that the Defendants' approval of the EA and DN/FONSI was arbitrary and capricious, an abuse of discretion, and not in accordance with law; (3) Vacating, setting aside, reversing and remanding the EA and DN/FONSI; (4) Vacating, setting aside, reversing and remanding any permits that have already been granted for the proposed Elkhorn Gravel Pit in reliance on the flawed EA and DN/FONSI; (5) Enjoining

Defendants from using the NEPA decision documents in subsequent proceedings, including decisions whether to grant licenses, permits and approvals for the proposed new Elkhorn Gravel Pit unless and until the Defendants fully comply with the requirements of NEPA, NFMA and the APA; (6) Directing that the Plaintiffs be allowed to recover their costs, including reasonable attorneys' fees, incurred in connection with this action, as provided for under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable laws; and (7) Providing such other and further relief as the Court may deem just and reasonable  and in the public interest.

## JURISDICTION AND VENUE

29.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief), because the matter in controversy arises under the laws of the United States, including the National Environmental Policy Act, the National Forest Management Act, and Administrative Procedure Act.

30.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(e)(1), because, among other things, Defendants United States Forest Service, Secretary of the United States Department of Agriculture Tom Vilsack, and Chief of the United States Forest Service Tom Tidwell, and Plaintiff National Parks Conservation Association all reside in this judicial district.

31.    NPCA's requested relief is proper because NPCA has no adequate remedy at law. The relief that NPCA seeks will redress the injuries to NPCA and its members.  Unless this Court grants the requested relief, the Defendants' actions will cause irreparable harm to the environment and natural resources, to NPCA's and its members' interests, and to the public in violation of federal laws and contrary to the public interest.  No monetary damages or other legal remedy could adequately compensate NPCA, its members, or the public, for these harms.

32.    NPCA and its members are persons adversely affected or aggrieved by federal

agency action within the meaning of Section 702 of the Administrative Procedure Act.  5 U.S.C. § 702.

33.    NPCA exhausted its administrative remedies by timely filing written comments on the proposed new Elkhorn Gravel Pit and by timely objecting to the Defendant Forest Service's Draft DN/FONSI on June 12, 2014 pursuant to 36 C.F.R. § 218.8.

## PARTIES

34.    Plaintiff National Parks Conservation Association is a nonpartisan non-profit organization headquartered in Washington, D.C. whose mission is to provide an independent voice for protecting and enhancing America's National Park System for present and future generations.  NPCA has over 360,000 members nationwide, including 1,115 in Washington, D.C. and 695 in North Dakota.  NPCA and its members use, enjoy and work to conserve our National Park System, including Theodore Roosevelt National Park.  NPCA and its members are actively engaged in protecting the viewsheds, soundscapes, airsheds, watersheds, and other values that make Theodore Roosevelt National Park unique and worthy of National Park-level protection for the American people.

35.    NPCA's members and supporters from around the United States use and enjoy the land and natural areas that would be affected and degraded by the construction and operation of the proposed large new Elkhorn Gravel Pit, associated road construction or reconstruction, and extensive related heavy truck traffic and development.

36.    Specifically, NPCA's members enjoy traveling to the Elkhorn Ranch Unit of Theodore Roosevelt National Park to walk where President Roosevelt walked and enjoy the same sounds and views that President Roosevelt experienced there.  They also hike, canoe, engage in photography, watch wildlife, bird-watch, and generally enjoy the unique attributes of

Theodore Roosevelt National Park and the North Dakota badlands.

37.     The Defendants' actions in issuing the DN/FONSI and their other related actions and omissions, as set forth in this Complaint, will irreparably harm NPCA and its members. The construction and operation of the proposed large new Elkhorn Gravel Pit will significantly impair NPCA members' use and enjoyment of the affected land and natural resources.

38.     Defendant United States Forest Service is an agency within the United States Department of Agriculture. The Forest Service is charged, among other things, with managing the lands and resources within the Dakota Prairie Grasslands in accordance and compliance with NEPA, NFMA and other federal laws and regulations. The Forest Service is responsible for overseeing the preparation of Environmental Assessments, reviewing Environmental Assessments to determine their compliance with NEPA and other federal laws and, when lawful and appropriate, approving or denying Environmental Assessments in the form of written Decision Notices.

39.     Defendant Forest Service, through its office in Dickinson, North Dakota, approved the proposed large new Elkhorn Gravel Pit and issued the DN/FONSI challenged in this action.

40.     Defendant Forest Service's issuance of the FONSI means that it found that there was "no significant impact" of the proposed large new Elkhorn Gravel Pit on the environmental, cultural, natural resource and historical values of the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

41.     As a result, Defendant Forest Service did not conduct an Environmental Impact Statement under the National Environmental Policy Act.

42.     Defendant Tom Vilsack is the Secretary of the United States Department of

Agriculture ("USDA").   Secretary Vilsack oversees the activities of the USDA and its constituent agencies, including the Forest Service.   Among other things, Secretary Vilsack is formally responsible for determining when conditions in a National Forest or Grassland unit have significantly changed and therefore require a revision to the Land and Resource Management Plan for that forest or grassland.  16 U.S.C. § 1604(f)(5).  Secretary Vilsack is sued in his official capacity.

43.     Defendant Tom Tidwell is the Chief of the United States Forest Service.   Chief Tidwell "administers the formulation, direction, and execution of Forest Service policies, programs, and activities" under the direction of the Secretary of Agriculture.   36 C.F.R. § 200.1(b).  Chief Tidwell is sued in his official capacity.

44.     Defendant Leanne Marten is the Regional Forester for the Northern Region of the United States Forest Service, also known as Region 1, which includes the Dakota Prairie Grasslands.   Regional Forester Marten leads the land management programs for the region. Regional Forester Marten is sued in her official capacity.

45.     Defendant Dennis Neitzke is the Forest/Grasslands Supervisor of the Dakota Prairie Grasslands.  He is responsible to the Regional Forester for the management of the Dakota Prairie Grasslands, as well as for the coordination of the ranger districts within the Dakota Prairie Grasslands, including the Medora Ranger District.  36 C.F.R. § 200.2(a).  Supervisor Neitzke is sued in his official capacity.

46.     Defendant Shannon Boehm is the District Ranger for the Medora Ranger District in the Dakota Prairie Grasslands.  He is responsible to the Forest Supervisor for supervising the Medora Ranger District.  36 C.F.R. § 200.2(a)(2).  District Ranger Boehm's predecessor signed the DN/FONSI at issue in this Complaint.  District Ranger Boehm is sued in his official capacity.

## APPLICABLE LAW

## The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*.

47.     NEPA is the "basic national charter for protection of the environment."  40 C.F.R.

§ 1500.1(a).  NEPA seeks to protect the environment by ensuring that public officials "make

decisions that are based on understanding of environmental consequences, and take actions that

protect, restore, and enhance the environment."  40 C.F.R. § 1500.1(c).

48.     To accomplish these purposes, NEPA requires all federal agencies to prepare a

detailed Environmental Impact Statement ("EIS") on every proposal for a major federal action

that may significantly affect the quality of the human environment.  *See, e.g.*, 42 U.S.C. §

4332(2)(C); *Grand Canyon Trust v. FAA*, 290 F.3d 339, 340 (D.C. Cir. 2002).  NEPA defines the

required elements of an EIS, which must include a detailed discussion of:

(i)     the environmental impact of the proposed action;

(ii)    any adverse environmental effects which cannot be avoided should the
        proposal be implemented;

(iii)   alternatives to the proposed action;

(iv)    the relationship between local short-term uses of man's environment
        and the maintenance and enhancement of long-term productivity; and

(v)     any irreversible and irretrievable commitments of resources which
        would be involved in the proposed action should it be implemented.

*Id*.

49.     When an agency is not sure whether or not an action will significantly affect the

environment and thus require the preparation of an EIS, NEPA's governing regulations direct the

agency to prepare an Environmental Assessment ("EA") in order to determine whether an EIS is

required.  40 C.F.R. §§ 1501.4(b), 1508.9.  An EA is "a concise public document" that "[b]riefly

provide[s] sufficient evidence and analysis for determining whether to prepare an environmental

11

impact statement or a finding of no significant impact."  40 C.F.R. § 1508.9(a).  It must include discussions of the need for the proposed action, alternatives to the proposal as required by 42 U.S.C. § 4332(2)(E), the environmental impacts of the proposed action and its alternatives, and a "listing of agencies and persons consulted."  40 C.F.R. § 1508.9(b).

50.     If the federal agency determines in its EA that a project might significantly affect the human environment, then the agency must prepare an EIS before agency action is taken.  *See* 42 U.S.C. § 4332(C); *Grand Canyon Trust*, 290 F.3d at 340; *Sierra Club v. Peterson*, 717 F.2d 1409, 1415 (D.C. Cir. 1983).

51.     If the agency determines in its EA that there are no significant impacts to the environment from the proposed action, the agency can prepare a "Finding of No Significant Impact" document explaining the reasons why the action "will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared."  40 C.F.R. § 1508.13.

52.     To determine whether a proposed action may "significantly" affect the human environment and therefore require an EIS, agencies must consider both the context and intensity of that action.  40 C.F.R. § 1508.27.  Context "means that the significance of an action must be analyzed in several contexts such as society as a whole…, the affected region, the affected interests, and the locality.  Significance varies with the setting of the proposed action."  *Id.* at § 1508.27(a).

53.     Intensity "refers to the severity of impact," including, among other factors: "unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, […] wild and scenic rivers, or ecologically critical areas;" "the degree to which the effects on the quality of the human environment are likely to be highly controversial;" "the

degree to which the action could establish a precedent for future actions with significant effects;" "the degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in … the National Register of Historic Places or may cause loss or destruction of significant scientific, cultural, or historical resources;" and whether the action "threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment." 40 C.F.R. § 1508.27(b)(1 – 10).

54.     The environmental impacts that a NEPA analysis must consider include "direct," "indirect," and "cumulative" impacts.  "Direct" impacts are "caused by the action and occur at the same time and place."  40 C.F.R. § 1508.8(a).  "Indirect" impacts include "growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems." 40 C.F.R. § 1508.8(b).  "Cumulative" impacts result from the incremental impact of the proposed action when combined with other past, present, and reasonably foreseeable future actions.  40 C.F.R. § 1508.7.  *See also, e.g.*, *Grand Canyon Trust*, 290 F.3d at 341–42.

55.     NEPA requires federal agencies to study, develop, and describe appropriate alternatives to recommended courses of action in any proposal that involves unresolved conflicts concerning alternative uses of available resources.  42 U.S.C. § 4332(2)(E); 40 C.F.R. §§ 1502.13, 1502.14, 1508.9(b).

56.     Agencies may not define purpose and need statements in terms so narrow as to make the selection of an alternative for a proposed project a "foreordained formality." *See, e.g.*, *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 0172 (9th Cir. 2010).

57.     In conducting their analyses, agencies must use high quality, accurate scientific

information and must ensure the scientific and professional integrity of their NEPA document. 40 C.F.R. §§ 1500.1(b), 1502.24.

58.     When information is incomplete or unavailable, agencies must take steps to remedy the lack of information.   40 C.F.R. § 1502.22.   Reliance upon old or incomplete information in the preparation of an EA "may render the [agency's' analysis of [a proposal's] effects speculative and uncertain, warranting the preparation of an EIS."   *City of Dallas v. Hall*, 562 F.3d 712, 720 (5th Cir. 2009).

59.     Agencies should take into consideration the recommendations of federal partner agencies.  A proposed action is more likely to be "highly controversial" and thus require an EIS where other federal agencies and individual commenters have disputed the NEPA evaluation. *See Friends of the Earth, Inc., v. U.S. Army Corps of Engineers*, 109 F. Supp. 2d 30, 43 (D.D.C. 2000).

### The National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*

60.     The National Forest Management Act governs the Forest Service's management of our national forests and grasslands.

61.     NFMA requires that the Forest Service develop a Land and Resource Management Plan ("Forest Plan") for each unit of the National Forest System, including the Dakota Prairie Grasslands.  16 U.S.C. § 1604(a); 36 C.F.R. § 213.3.

62.     Forest Plans contain standards and guidelines for public lands management.  All site-specific projects, permits and activities on the national forests and grasslands must be consistent with the applicable Forest Plan.  16 U.S.C. § 1604(i); 36 C.F.R. § 219.10.

63.     Forest Plans must be revised whenever the Secretary of Agriculture finds that "conditions in a unit have significantly changed."  16 U.S.C. § 1604(f)(5)(A); *see also* 36 C.F.R. § 219.7; 36 C.F.R. § 213(a).

14

**The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553-559, 701-706**

64.     The APA provides for judicial review of agency actions, including those at issue here.  A reviewing court shall hold unlawful and set aside agency actions, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

## FACTUAL BACKGROUND

65.     The proposed new Elkhorn Gravel Pit would be built on 24.6 acres of land in the Greater Elkhorn Ranchlands National Historic District within the Dakota Prairie Grasslands, in clear view from and of President Theodore Roosevelt's Elkhorn Ranch in Theodore Roosevelt National Park.

66.     This proposed large new gravel pit would require construction or reconstruction of four roads that the Forest Service asserts are necessary for any new mining or oil and gas development within the Greater Elkhorn Ranchlands National Historic District.

67.     An additional 1.3 acres of land will be disturbed due to the construction or reconstruction of those roads.

68.     Construction and operation of the proposed new gravel pit and the roads, along with expected additional development, would threaten the enduring aesthetic, cultural, historic, and environmental values that make Theodore Roosevelt National Park and the Greater Elkhorn Ranchlands National Historic District uniquely important.

69.     The Forest Service acquired the lands that encompass the proposed large new gravel pit in 2007 after collaborating with a group of over 100 private individuals and organizations from around the United States to purchase and secure over 5,000 acres of the historic Elkhorn Ranchlands for the American people.

70.     The Elkhorn Ranchlands are part of President Theodore Roosevelt's historic

15

Elkhorn Ranch.   In conjunction with National Park Service and North Dakota Park and Recreation lands, they comprise a large portion of the viewshed that was visible from Theodore Roosevelt's veranda at the Ranch.

71.     As a result of the land's natural beauty and its historical significance, the National Park Service has taken care to manage the Elkhorn Ranch Unit of Theodore Roosevelt National Park as minimally as possible, leaving "this special place as Roosevelt knew it."  *See* National    Park    Service,    Elkhorn    Ranch    brochure    at    1,    *available    at* http://www.nps.gov/thro/planyourvisit/loader.cfm?csModule=security/getfile&PageID=178484.

72.     Despite the Forest Service's acquisition of over 5,000 acres of historically, culturally and environmentally significant property, the Forest Service never amended nor otherwise reviewed its Land and Resource Management Plan for the Dakota Prairie Grasslands.

73.     The Forest Service also failed to amend the Dakota Prairie Grasslands Forest Plan after a large majority of its significant land acquisition was placed on the National Register of Historic Places as a National Historic District in October 2012.

74.     On or about October 5, 2011, the Forest Service began the process of preparing its NEPA analysis for the proposed large new Elkhorn Gravel Pit.

75.     On or about November 3, 2011, the National Park Service, a federal cooperating agency involved in the NEPA environmental review process on the proposed large new Elkhorn Gravel Pit, submitted comments to the Forest Service.  The National Park Service stated that the "request to mine gravel within the viewshed and soundscape of [Theodore Roosevelt National Park's] Elkhorn Ranch Unit is disturbing."

76.     The National Park Service further stated in its formal comments that the affected lands are "critical to the viewshed, soundscape, and historic integrity of our most remote and

historically significant part of the park, which is of primary concern to the National Park Service and the public."

77.     Consequently, the National Park Service requested that Defendant Forest Service conduct an Environmental Impact Statement to fully assess the environmental impacts of and possible alternatives to the proposed large new gravel pit.

78.     Notwithstanding the National Park Service's request and the significant adverse impacts and controversial nature of the proposed new gravel pit, Defendant Forest Service prepared an Environmental Assessment instead of an Environmental Impact Statement.

79.     On or about May 11, 2012, the Forest Service released a Draft Environmental Assessment announcing its intention to allow the development of the nearly 25-acre gravel pit within the National Historic District of the Medora Ranger District.

80.     The Draft EA's Purpose and Need Statement asserted that the purpose of the NEPA analysis was to conduct analysis necessary to authorize the exploration of private mineral rights in the area requested by Elkhorn Minerals LLC – namely, the area of the proposed Elkhorn Gravel Pit.

81.     The Draft EA stated that it would only consider two alternatives in detail: a "build" alternative that allowed the construction of the proposed large new Elkhorn Gravel Pit, and a "no-build" alternative.

82.     However, the Draft EA immediately discounted the no-build alternative, leaving only the build alternative.

83.     The Draft EA also rejected several other viable options for getting the mineral rights owners the value of their rights without disturbing the National Historic District, including:

(1) Purchasing the mineral rights from the proposed Operator; and

(2) Exchanging surface mineral rights between the proposed Operator and the Forest Service to avoid mining in a historic district.

84.     The Draft EA conceded that the proposed large new gravel pit would be seen from at least 50% of the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

85.     The Draft EA conceded that the proposed gravel pit would also adversely affect the soundscape of the Elkhorn Ranch Unit of Theodore Roosevelt National Park and the Greater Elkhorn Ranchlands National Historic District.

86.     The Draft EA stated that even with noise mitigation measures in place, "noise from the mining proposal …would be clearly noticeable within the park."

87.     The Draft EA recognized that it could take decades to reclaim the overall landscape of the area.

88.     The Draft EA stated that several reasonably foreseeable actions were likely to occur in the vicinity of the proposed large new Elkhorn Gravel Pit, including additional oil and gas development and a high probability of additional gravel mining.

89.     The Draft EA failed to discuss cumulative impacts to the Elkhorn Ranch soundscape from the use of reconstructed roads in the project area or from the additional oil and gas wells that it states will likely occur in the future.

90.     The Draft EA failed to discuss indirect effects of the road reconstruction on the soundscape and view from Theodore Roosevelt National Park, notwithstanding its statements that road reconstruction was necessary for future mineral and oil and gas development and that both mineral and oil and gas development are reasonably foreseeable actions.

91.     The Draft EA failed to provide data on the number of tourists that would be

adversely affected by the direct, indirect, and cumulative effects of the proposed new gravel pit. The Draft EA conceded that tourism would decline, but stated that it lacked sufficient data to provide accurate numbers on how many visitors would be affected over time.

92.     Despite the significant changes to the Dakota Prairie Grasslands since its Forest Plan was finalized in 2001, the Forest Service relied upon the old Forest Plan in conducting its analysis.

93.     Plaintiff NPCA, the United States National Park Service, and the National Trust for Historic Preservation were among the more than fifty individuals and organizations from across the country that filed comments raising multiple legal and factual concerns with the Draft EA.

94.     On or about June 5, 2012, Plaintiff National Parks Conservation Association submitted comments on the Draft EA.

95.     Plaintiff NPCA requested that Defendant Forest Service complete an amendment to the outdated Dakota Prairie Grasslands Forest Plan prior to any further consideration of the proposed large new gravel pit in light of the fact that the Forest Plan does not consider the management of the historically significant lands that will be affected by the proposed construction and mining operation.

96.     Among other things, Plaintiff's comments further stated that:

(1) The adverse impacts of the proposed new gravel pit disclosed in the Draft EA require the conclusion that an EIS should be prepared.

(2) The Draft EA failed to consider an adequate range of alternatives for the proposed action in light of the fact that the Forest Service only included two alternatives and stated that it cannot pursue one of them.

(3) The Purpose and Need Statement included in the Draft EA was unreasonably narrow and artificially limited reasonable alternatives to the proposed new gravel pit by using language that made approving the proposed new gravel pit the only possible option.

(4) The Draft EA included an inadequate analysis of the cumulative impacts of the proposed large new gravel pit, in particular the cumulative impacts of what the Forest Service acknowledged as "reasonably foreseeable" oil and gas development and further mining development on the historic character of the Elkhorn Ranch.

(5) The Draft EA failed to adequately consider the direct, indirect and cumulative impacts of the proposed large new gravel pit on the Elkhorn Ranch Unit of Theodore Roosevelt National Park, including negative effects to the viewshed, soundscape, ecological integrity, cultural and historical character of the Elkhorn Ranch, which will have adverse impacts on visitors' experiences.

97.     Defendant Forest Service provided the National Park Service with a draft copy of the EA only two days before it was released to the general public.

98.     On or about June 11, 2012, the National Park Service submitted comments on the Draft EA.

99.     The National Park Service stated that the Defendant Forest Service had not adequately engaged the National Park Service as a cooperating federal agency.

100.    The National Park Service's formal comments explained several major flaws in the Draft EA, including:

(1) Defendant Forest Service's failure to fully and fairly consider significant potential impacts to historically significant resources and resultant negative effects to the visitor experience;

(2) Defendant Forest Service's failure to complete an amendment to the Dakota Prairie Grasslands Forest Plan since acquiring the Elkhorn Ranchlands, and its reliance on an existing plan that fails to take into account "the historic significance, sensitivity, and high public interest in these acquired lands" that would be affected by the proposed gravel pit; and

(3) Defendant Forest Service's failure to analyze more than one alternative for the proposed action.

101.     The National Park Service reiterated its request that the Forest Service complete an EIS for the proposed large new gravel pit in light of these and other concerns.

102.     On or about June 8, 2012, the National Trust for Historic Preservation submitted comments on the Draft EA identifying an additional major flaw regarding the Forest Service's failure to obtain or collect data concerning the proposed gravel pit's impacts on tourism in the National Park.

103.     On or about April 21, 2014, notwithstanding the comments submitted by Plaintiff National Parks Conservation Association, the National Park Service, the National Trust for Historic Preservation and others, the Defendant Forest Service issued a Final EA and Draft Decision Notice and Finding of No Significant Impact approving the construction of the proposed large new Elkhorn Gravel Pit within the viewshed of the historic Elkhorn Ranch Unit of Theodore Roosevelt National Park.

104.     The Final EA and Draft DN/FONSI include many of the same errors that Plaintiff and others identified in the Draft EA, including, but not limited to: (a) an impermissibly narrow Purpose and Need Statement that made the approval of the proposed new Elkhorn Gravel Pit a foreordained conclusion; (b) the failure to fully and fairly consider more than one alternative for

the project; (c) the failure to take a hard look at the direct, indirect, and cumulative impacts of the proposed large new gravel pit; and (d) reliance on an outdated Forest Plan that does not take into account the public acquisition of the historically and culturally significant Elkhorn Ranchlands.

105.    Plaintiff NPCA filed a written objection to the Final EA and Draft DN/FONSI with the Forest Service on June 12, 2014.

106.    Among other things, Plaintiff's objections state that the Defendant's Draft DN/FONSI:

(1) Failed to rigorously explore and objectively evaluate an appropriate range of alternatives by analyzing only one action alternative and dismissing the no action alternative out of hand, while also dismissing two viable, reasonable action alternatives without detailed analysis.

(2) Relied on an impermissibly narrow Purpose and Need Statement to reject other viable alternatives.

(3) Failed to recognize the need for an EIS even though the EA explicitly recognizes that the proposed large new gravel pit will cause significant adverse impacts to the Elkhorn Ranch Unit of Theodore Roosevelt National Park and the surrounding Elkhorn Ranchlands, and even though cooperating federal agency National Park Service specifically requested that an EIS be conducted.

(4) Failed to adequately analyze the direct, indirect, and cumulative impacts of the proposed large new gravel pit on the Elkhorn Ranch Unit of Theodore Roosevelt National Park.

(5) Relied on an outdated and insufficient Forest Plan that does not consider the acquisition of the historically and ecologically significant Elkhorn Ranchlands that will be affected by the proposed large new gravel pit rather than amending the Forest Plan to include the

significant new property acquisition before conducting the environmental review process and analysis.

107.    Plaintiff NPCA requested that the Forest Service rescind the DN/FONSI, pursue a mineral rights exchange to avoid disturbing Theodore Roosevelt National Park and the Greater Elkhorn Ranchlands, and complete the amendment to the Forest Plan required by law.  Should the Forest Service be unable to complete the mineral rights exchange, NPCA requested that the Forest Service conduct a full EIS for the proposed large new Elkhorn Gravel Pit.

108.    Maryland resident Lowell Baier submitted a written objection on behalf of himself, the Boone and Crockett Club, and Friends of the Elkhorn Ranch on June 13, 2014.  Mr. Baier objected to the fact that the Defendant Forest Service has not amended its Forest Plan to include the acquisition of the Elkhorn Ranchlands and relies upon the outdated Plan to govern its response to the proposed gravel pit.  Among other things, Mr. Baier also stated that the Draft DN/FONSI:

(1) Failed to recognize the need for an EIS despite the adverse effects of the proposed large new gravel pit on the historically significant Elkhorn Ranchlands, Theodore Roosevelt National Park, and Little Missouri River watershed;

(2) Failed to adequately address the impacts of the proposed large new gravel pit on the visitor experience, and the potential negative impacts of a degraded visitor experience on tourism.

(3) Failed to fully and fairly consider alternatives to the proposed large new gravel pit such as an exchange or purchase of the applicants' mineral rights.

109.    Many other individuals and organizations also submitted objections to the Draft DN/FONSI, including the Badlands Conservation Alliance and the National Trust for Historic

Preservation.

110.    On January 6, 2015, the Forest Service approved the Final DN/FONSI for the proposed large new Elkhorn Gravel Pit, making no changes in response to the concerns expressed in the comments and objections discussed in this complaint.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

## VIOLATIONS OF THE NATIONAL ENVIRONMENTAL POLICY ACT AND THE ADMINISTRATIVE PROCEDURE ACT

111.    NPCA reasserts and realleges Paragraphs 1 through 110 above.

112.    Defendants violated NEPA, its implementing regulations, and the Administrative Procedure Act, in approving the Decision Notice / Finding of No Significant Impact for the proposed large new Elkhorn Gravel Pit by:

(1) Adopting an improperly narrow Purpose and Need Statement that arbitrarily and improperly made selection of the proposed large new Elkhorn Gravel Pit a foregone conclusion;

(2) Failing to rigorously explore and objectively evaluate alternatives for the proposed large new Elkhorn Gravel Pit;

(3) Failing to conduct an Environmental Impact Statement for the proposed new large gravel pit  even though demonstrably significant adverse environmental impacts are reasonably likely to result from development associated with the proposed large new Elkhorn Gravel Pit and even though the National Park Service, a cooperating federal agency, specifically requested the Forest Service prepare an Environmental Impact Statement;

(4) Failing to take a "hard look" at the direct environmental impacts of building the proposed large new Elkhorn Gravel Pit, including but not limited to: negative impacts to tourism

and to the soundscape and viewshed of the historic Elkhorn Ranch Unit of Theodore Roosevelt National Park due to the construction and operation of the proposed gravel pit;

(5) Failing to take a "hard look" at the indirect environmental impacts of building the proposed new Elkhorn Gravel Pit, including but not limited to: negative impacts to tourism and to the soundscape and viewshed of the historic Elkhorn Ranch Unit of Theodore Roosevelt National Park due to effects from reconstructed and newly constructed roads and resultant traffic and development;

(6) Failing to take a "hard look" at the cumulative environmental impacts of building the proposed new Elkhorn Gravel Pit, including but not limited to: increased oil and gas development, increased mining, and increased usage of rebuilt roads and their resultant adverse impacts on soundscape in conjunction with the proposed large new gravel pit;

(7) Failing to utilize up-to-date, accurate studies and information in its NEPA analysis; and

(8) Relying upon an insufficient, outdated Forest Plan.

113.    Accordingly, Defendants' failure to comply with NEPA and its implementing regulations and Defendants' approval of the Decision Notice/Finding of No Significant Impact was arbitrary and capricious, an abuse of discretion, and not in accordance with law, and thus violates the Administrative Procedure Act, 5 U.S.C. § 706.

## COUNT II

### VIOLATIONS OF THE NATIONAL FOREST MANAGEMENT ACT AND THE ADMINISTRATIVE PROCEDURE ACT

114.    NPCA reasserts and realleges Paragraphs 1 through 113 above.

115.    Defendants violated NFMA, its implementing regulations and the Administrative Procedure Act by:

(1) Failing to revise or amend the Forest Plan for the Dakota Prairie Grasslands after the

25

acquisition of significant new property within the Dakota Prairie Grasslands that has significant cultural, historic, recreational, and environmental values, and whose management is not considered in the current Forest Plan; and

(2) Failing to revise or amend the Forest Plan even after that land's inclusion in the National Register for Historic Places.

116.    Accordingly, Defendants' failure to comply with NFMA and its implementing regulations and its approval or the DN/FONSI was arbitrary and capricious, an abuse of discretion, and not in accordance with law, and thus violates the Administrative Procedure Act, 5 U.S.C. § 706.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in favor of Plaintiffs and against Defendants and enter an Order:

(1) Declaring that the Defendants' approval of the Environmental Assessment and Decision Notice / Finding of No Significant Impact for the proposed new Elkhorn Gravel Pit violated the National Environmental Policy Act and the National Forest Management Act.

(2) Declaring that the Defendants' approval of the Environmental Assessment and Decision Notice / Finding of No Significant Impact violated the Administrative Procedure Act because it was arbitrary and capricious, an abuse of discretion, and not in accordance with law.

(3) Vacating, setting aside, reversing and remanding the Environmental Assessment and Decision Notice / Finding of No Significant Impact for the proposed Elkhorn Gravel Pit.

(4) Vacating, setting aside, reversing and remanding any permits that have already been granted for the proposed Elkhorn Gravel Pit in reliance on the flawed Environmental Assessment and Decision Notice / Finding of No Significant Impact.

(5) Enjoining Defendants from using the Environmental Assessment and Decision Notice / Finding of No Significant Impact in subsequent proceedings, including decisions whether to grant licenses, permits and approvals for the proposed new Elkhorn Gravel Pit, unless and until the Defendants fully and fairly comply with the requirements of the National Environmental Policy Act, the National Forest Management Act and the Administrative Procedure Act.

(6) Allowing the Plaintiffs recover their costs, including reasonable attorneys' fees, incurred in connection with this action, as provided for under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable laws; and

(7) Granting such other and further relief as the Court may deem just and reasonable and in the public interest.

Date: September 29, 2015                    Respectfully submitted,

                                           s/ Howard A. Learner
                                           _____
                                           Howard A. Learner
                                           Jennifer L. Cassel
                                           Environmental Law and Policy Center
                                           35 East Wacker Drive, Suite 1600
                                           Chicago, IL 60601
                                           Phone:  (312) 673-6500
                                           Fax:     (312) 795-3730
                                           E-mail:  hlearner@elpc.org
                                                    jcassel@elpc.org

                                           *Attorneys for National Parks*
                                           *Conservation Association*

27